UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:13-cv-23071-MGC

YOSVANY UTRA,

    Plaintiff,

v.

FTS USA, LLC and
UNITEK USA, LLC,

    Defendants.
_____/

### DEFENDANT FTS USA, LLC'S AND UNITEK USA, LLC'S RESPONSE TO PLAINTIFF'S STATEMENT OF CLAIM

Defendants, FTS USA, LLC ("FTS"), and Unitek USA, LLC ("Unitek", collectively "Defendants"), by and through its undersigned counsel, and pursuant to this Court's Order of September 9, 2013 [D.E. # 12], hereby responds to Plaintiff's Statement of Claim as follows:

1.     <u>Plaintiff Yosvany Utra</u>

Utra's Complaint fails to state a cause of action for overtime as set forth in Defendants' Motion to Dismiss. <u>See</u> D.E. # 19. Specifically, Utra's Complaint fails to set forth a *prima facie* claim for a Fair Labor Standard Act ("FLSA") violation since the Complaint lacks any details or information regarding the amount and extent of his work in order to demonstrate that he was inadequately compensated. <u>Rance v. Rocksolid Granit USA, Inc.</u>, 292 Fed. App'x. 1, 2008 WL 2751291 (11th Cir., July 16, 2008); <u>see</u> <u>also</u> <u>St. Croix v. Genetech, Inc.</u>, 2012 WL 2376668 (M.D. Fla., June 22, 2012)(FLSA Complaint failed to state a cause of action for overtime because plaintiff failed to provide dates or date ranges during which she worked overtime.)

Regarding Utra's statement of claim, Defendants admit that Utra began his employment with FTS in October 2012. Defendants otherwise dispute Utra's statement of claim for the

1

following reasons. During his orientation, Utra executed a Payroll Explanation and Compliance form which explained that Technicians that work in the field, like Utra, would be paid based on his production for that week (of course, he would always be paid at least minimum wage for the hours he worked or overtime minimum wage if he worked in excess of 40 hours per week). See Payroll Explanation and Compliance Form, attached as Exhibit A. He further agreed to the assigned rates for each job and agreed that those rates would determine his effective-hourly-rate ("EHR"). Id., ¶ 4. Utra also agreed and understood FTS' policy that he was required to take a non-paid lunch break of 30 minutes for each eight (8) hour work day. Id., ¶ 6. Furthermore, since Utra worked in the field, he understood that he was required to keep daily detailed time records to document and track time worked, which would include tracking his hours from the time he arrived at work site until completion of the final job of the day, including travel time to and from jobs throughout the day, the time he took his lunch break, etc. Id., ¶ 7. Finally, Utra understood and agreed that he was required to list **all** work hours on his timesheet and that under or over reporting his work hours was, and is, a serious violation of company policy. See Exhibit A, ¶ 10.

Furthermore, Utra also signed a Paycheck Verification Procedure form in which he further agreed to report any errors or inaccuracies in his pay and the procedures and timing for doing so. See Paycheck Verification Procedure, attached as Exhibit B.

Utra's weekly time sheets, which he verified were accurate and complete, demonstrate that these procedures ensured that he received accurate pay and overtime pay. While Utra claims that "Defendant always deducted sixty (60) minutes for lunch", Utra's weekly time sheets instead show that Utra took, on average, thirty (30) minutes for lunch as required. See Weekly Time Sheets, attached as Exhibit C. Additionally, Utra's claim that he worked in "excess of

seventy (70) hours per week" is again contradicted by Utra's self-verified and executed time sheets.  Id.

Utra's claim that he did not receive overtime is completely inaccurate and fabricated.  To the extent Utra worked overtime, he was compensated for such time.  Specifically, his Earning Statements establish that he was properly paid overtime.  Utra received overtime pay for the pay periods ending:  (1) October 20, 2012; (2) November 3, 2012; (3) November 17, 2012; (4) December 1, 2012; (5) December 15, 2012; (6) January 12, 2013; (7) January 26, 2013; (8) February 9, 2013; (9) March 9, 2013; (10) March 23, 2013; (11) April 6, 2013; (12) April 20, 2013; (13) May 4, 2013; (14) May 18, 2013; (15) June 1, 2013; (16) June 29, 2013; (17) July 13, 2013; and (18) August 10, 2013.  Utra received in excess of $3,14.005 in overtime pay during this time period.  See Earning Statements, attached as Exhibit D.

2. Mariano Rodriguez:

Rodriguez's Complaint fails to state a cause of action for overtime as set forth in Defendants' Motion to Dismiss.  See D.E. # 19.

Regarding Rodriguez's statement of claim, Defendants deny that Rodriguez began his employment with FTS in November 2012.  However, Defendants admit that Rodriguez's employment with FTS ended in June 2013.  Defendants otherwise dispute Rodriguez's statement of claim for the following reasons.  Rodriguez was hired as a Field Supervisor, an exempt position at FTS, and therefore he was not entitled to overtime pay.  Rodriguez was paid in excess of $455 salary per week, in fact he was paid $850 salary per week.  See Earning Statements, attached as Exhibit E.  As a Field Supervisor, Rodriguez's primary duty was that of management of the Miami, Florida location.  Rodriguez's duties as a Field Supervisor included hiring and firing of Technicians, the supervision and discipline of up to fifteen (15) Technicians (and well

3

in excess of two (2)), responding to customer complaints, and tracking expenses, etc. See FTS Field Supervisor Job Description, attached as Exhibit F.

During his orientation, Rodriguez executed a Payroll Explanation and Compliance form which set forth payroll procedures. See Payroll Explanation and Compliance Form, attached as Exhibit G. Rodriguez also signed a Paycheck Verification Procedure form in which he further agreed to report any errors or inaccuracies in his pay and the procedures and timing for doing so. See Paycheck Verification Procedure, attached as Exhibit H.

3.   Mauro Diaz:

Diaz's Complaint fails to state a cause of action for overtime as set forth in Defendants' Motion to Dismiss. See D.E. # 19.

In response to Diaz's statement of claim, Defendants admit that Diaz began his employment with FTS in October 2012. Defendants further admit that Diaz's employment with FTS ended in May 2013. Defendants otherwise dispute Diaz's statement of claim for the following reasons. As part of his orientation, Diaz executed a Payroll Explanation and Compliance form which explained that Technicians that work in the field, like Diaz, would be paid based on his production for that week. See Payroll Explanation and Compliance Form, attached as Exhibit I. He further agreed to the assigned rates for each job and agreed that those rates would determine his EHR. Id., ¶ 4. Diaz also agreed and understood FTS' policy that he was required to take a non-paid lunch break of 30 minutes for each eight (8) hour work day. Id., ¶ 6. Moreover, since Diaz worked in the field he understood that he was required to keep detailed time records on a daily basis. Specifically, Diaz understood that he was required to track his time which would include his hours from the time he arrived at a work site until completion of the final job of the day, including travel time to and from jobs throughout the day,

4

the time he took his lunch break, etc. Id., ¶ 7.  Finally, Diaz also understood and agreed that he was required to list **all** work hours on his timesheet and that under or over reporting his work hours was a serious violation of company policy.  See Exhibit I, ¶ 10.

Diaz also signed a Paycheck Verification Procedure form in which he further agreed to report any errors or inaccuracies in his pay and the procedures and timing for doing so.  See Paycheck Verification Procedure, attached as Exhibit J.

Diaz's weekly time sheets, which he verified were accurate and complete, demonstrate these procedures ensured that he received correct pay and overtime pay.  Although Diaz claims that "Defendant always deducted sixty (60) minutes for lunch", Diaz's weekly time sheets instead show that during most weeks Diaz took, on average, thirty (30) minutes for lunch as required.  See Weekly Time Sheets, attached as Exhibit K.  Furthermore, for the weeks in which Diaz did not take a lunch break, a violation of company policy (i.e. the weeks of October 21, 2012 [FTS/UTRA 100], November 4, 2012 [FTS/UTRA 102], November 18, 2012 [FTS/UTRA 104] and December 23, 2012 [FTS/UTRA 109]) there were no deductions from his pay for lunch.  Id.  Additionally, Diaz's claim that he worked in "excess of seventy (70) hours per week" is again contradicted by Diaz's verified and signed time sheets.  See Exhibit K.

Diaz's assertion that he did not receive overtime is completely inaccurate and flatly contradicted by his Earning Statements.  To the extent Diaz worked overtime, he was compensated for such time.  Specifically, his Earning Statements establish that he was properly paid overtime.  Diaz received overtime pay for the pay periods ending:  (1) October 20, 2012; (2) November 3, 2012; (3) November 17, 2012; (4) December 1, 2012; (5) December 15, 2012; (6) December 29, 2012; (7) January 12, 2013; (8) January 26, 2013; and (9) February 9, 2013.  Diaz

received in excess of $3,444.00 in overtime pay during this time period.  See Earning Statements, attached as Exhibit L.

Thereafter, in February of 2013, Diaz was promoted to Field Supervisor, an exempt position, and therefore was no longer eligible for overtime pay.  Upon his promotion, Diaz was paid in excess of $455 salary per week, in fact, he was paid an $800 salary per week.  See Earning Statements, i.e. FTS/UTRA 127.  As a Field Supervisor, Diaz's primary duty was that of management of the Miami, Florida location.  Rodriguez's duties as a Field Supervisor included hiring and firing of technicians, the supervision and discipline of up to 15 technicians, responding to customer complaints, and tracking expenses, etc.  See Exhibit F.

Plaintiffs, and their counsel, have brought these claims in bad faith and, therefore, this Court should award Defendants attorneys' fees and costs in this matter.  Defendants reserve the right to include additional defenses and documents in support of those defenses as this matter moves forward.

        FOX ROTHSCHILD, LLP
        222 Lakeview Avenue, Suite 700
        West Palm Beach, FL 33401
        Telephone:  (561) 835-9600
        Facsimile:  (561) 835-9602

By: */s/  Dori K. Stibolt*
    Dori K. Stibolt
    Florida Bar No. 183611
    dstibolt@foxrothschild.com

    *Attorneys for Defendants FTS USA, LLC and Unitek USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Dori K. Stibolt
Dori K. Stibolt

## SERVICE LIST

*United States District Court*
*Southern District of Florida*

CASE NO: 9:13- cv-23071-MGC

| JAFFE GLENN LAW GROUP, P.A.<br>12000 Biscayne Blvd., Suite 305<br>Miami, FL 33181<br>Andrew I. Glenn<br>aglenn@jaffeglenn.com<br>Jodi J. Jaffe<br>jjaffe@jaffeglenn.com<br>Telephone: 305-726-0060<br>Facsimile: 305-726-0046<br><br>*Attorneys for Plaintiff* | FOX ROTHSCHILD LLP<br>222 Lakeview Avenue, Suite 700<br>West Palm Beach, FL 33401<br>Dori K. Stibolt<br>dstibolt@foxrothschild.com<br>Telephone: 561-835-9600<br>Facsimile: 561-835-9602<br><br>*Attorneys for Defendants FTS USA, LLC and Unitek USA, LLC* |